## In re EQUIPMENT FABRICATORS, INC.

**Fred H. SONNTAG, Trustee for Equipment Fabricators, Inc., Plaintiff–Appellee,**

v.

**UNITED STATES DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE, Defendant–Appellant.**

**Nos. CIV 90–1250 PHX RCB, B–83–00402 PHX RGM.**

**Adv. No. 88–344.**

United States District Court, D. Arizona.

Jan. 30, 1991.

Donald W. Powell, Carmichael & Powell, P.C., Phoenix, Ariz., for plaintiff-appellee.

Richard G. Patrick, Asst. U.S. Atty., Phoenix, Ariz., for defendant-appellant.

### ORDER

BROOMFIELD, District Judge.

A judgment was entered in this action in favor of Fred Sonntag, plaintiff-appellee, on February 5, 1990. Defendant, the Internal Revenue Service ("IRS"), timely appealed and objected to the disposition of the appeal by the Ninth Circuit Bankruptcy

---

Appellate Panel. After careful review of the parties arguments, the Court now rules.

## I. FACTS

The facts are not in dispute. Equipment Fabricators, Inc. filed for Chapter 11 bankruptcy relief on February 10, 1983. David Pauling, the president of the company, was appointed to act as debtor in possession. However, the debtor failed to pay its employment tax obligations, pursuant to 26 U.S.C. §§ 3102(a) and 3402(a). Quarterly tax obligations for the first three quarters of 1983 were not paid. On August 17, 1983, the Bankruptcy Court appointed Mr. Sonntag as the Chapter 11 trustee of the estate, pursuant to 11 U.S.C. § 1106.

It appears that Mr. Sonntag while operating the business, paid some post-petition estate expenses, such as payroll, state and federal taxes, utilities, insurance, rent, etc. Also during that period, the IRS filed Requests for Payment for the post-petition unpaid employment tax obligations of the debtor. On October 24, 1984, the Bankruptcy Court authorized the sale of the business. And on August 8, 1985, the Court ordered Mr. Sonntag not to pay administrative expenses until the liquidation was complete.

On April 10, 1987, Mr. Sonntag was personally assessed for the estate's withholding liability for the following periods: part of the third and the entire fourth quarters of 1983 and all four quarters of 1984. On December 10, 1987, Mr. Sonntag filed an application to pay the administrative claims on a pro rata basis and reported that he had liquidated all assets of the estate. The parties explain that the estate consisted of $356,000 in cash, but approximately $525,-000 post-petition administrative expense claims were pending. On February 2, 1988, the Bankruptcy Court approved the payment of administrative claims on a pro rata basis and ordered that the case be dismissed.

On February 18, 1988, the Trustee issued an estate check for $240,265.70 to the IRS, representing the pro rata share of the estate's assets. Accompanying the check were the following instructions: (1) the money was to be applied first to the estate's trust fund tax obligations incurred after Mr. Sonntag's appointment, August 17, 1983; (2) the remaining funds were then to be used to satisfy any other estate tax obligations incurred after August 17, 1983; (3) they were to release the June 1987 tax lien filed against Mr. Sonntag; and (4) any money collected by the IRS from Mr. Sonntag on his 26 U.S.C. § 6672 assessment was to be returned to him. The IRS rejected the Trustee's conditions and returned the check on March 2, 1988. The IRS maintained that Ninth Circuit law prevented the Trustee from designating how the IRS would apply the payment to the estate's liability.

On June 8, 1988, Mr. Sonntag filed his complaint, seeking, *inter alia*, a Court order compelling the IRS to apply its pro rata share of the estate's assets to the estate's employment tax obligations, incurred after the date of his appointment. On October 5, 1988, an administrative creditor filed an application for an order directing Mr. Sonntag to show cause why he should not be removed as Trustee for his failing to follow the distribution order. The Bankruptcy Court terminated Mr. Sonntag's appointment as Trustee and appointed a Successor Trustee.

On November 20, 1989, Mr. Sonntag moved for summary judgment in his adversary action against the IRS. The Bankruptcy Court granted Mr. Sonntag's motion and signed the submitted form of judgment, ordering that the $240,265.20 that had been paid to the IRS on December 11, 1989 be applied first to the estate's unpaid withholding tax obligations incurred after Mr. Sonntag's 1983 appointment and thereafter to preappointment estate withholding tax obligations. The IRS timely appealed on February 7, 1990.

## II. STANDARD OF REVIEW

The parties agree that the Court reviews the Bankruptcy Court's grant of summary judgment *de novo*. *See Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). Therefore, the Court will apply the stan-

dard under Fed.R.Civ.P. 56(c). The facts and inferences from the facts are viewed in the light most favorable to the non-moving party, the IRS, and the burden is placed on the moving party, Mr. Sonntag, to establish that there is no genuine issue of material facts and that he was entitled to judgment as a matter of law. *See Matsushita Electric Industrial Co., v. Zenith Radio Corp.*, 475 U.S. 574, 577, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 546 (1986).

## III. DISCUSSION

*Jurisdiction and Authority to Compel the IRS to Apply A Distribution of Assets*

The Government argues that the Bankruptcy Court did not have subject matter jurisdiction *or* the authority to compel the IRS to apply the distribution of estate assets in such a manner as to personally benefit the trustee against whom a 26 U.S.C. § 6672 tax liability had been assessed. The Government maintains that *In re Technical Knockout Graphics*, 833 F.2d 797 (9th Cir.1987) is directly on point and holds that the Bankruptcy Court cannot designate that tax payments made prior to a confirmation of reorganization, during a Chapter 11 bankruptcy, be applied first to satisfy the corporation's trust fund liability, and thereby protect corporate principals from potential personal liability. *Id.* at 798. Mr. Sonntag argues, on the other hand, that *Technical Knockout* is limited to a discussion concerning voluntary and involuntary tax payments. Furthermore, the recent Supreme Court opinion in *United States v. Energy Resources, Inc.*, — U.S. ——, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990), *affirming* 871 F.2d 223 (1st Cir. 1989), held that a Bankruptcy Court had the authority to order that the IRS treat tax payments made by a Chapter 11 debtor corporation as trust fund payments, where it was necessary for the success of a reorganization plan.

The corporation in *Technical Knockout* defaulted on the payment of corporate income, Social Security, unemployment and income withholding taxes. 833 F.2d at 799. After the corporation filed its petition for reorganization under Chapter 11, the government filed a proof of claim for delinquent taxes. The Court explained:

> The Internal Revenue Code (Code) provides that taxes required to be deducted by employers from the wages paid to employees under 26 U.S.C. §§ 3102(a) and 3402(a), such as withholding and Social Security taxes, "shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501(a). The withheld funds are commonly referred to as "trust fund" taxes. *Slodov v. United States*, 436 U.S. 238, 242–43, 98 S.Ct. 1778, 1782–83, 56 L.Ed.2d 251 (1978). "Non-trust fund" taxes are those not collected from employees' wages. Under the Code, the employer is responsible for collecting, and is personally liable for, the trust fund taxes. 26 U.S.C. §§ 3102(a), (b), 3402, 3403, 6672.

> \*    \*    \*    \*    \*    \*

> Congress has imposed personal liability on any officer or employee of the employer responsible for the collection and payment of trust fund taxes who "willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat such tax or the payment thereof." 26 U.S.C. § 6672.... This is not true for non-trust fund taxes.

> \*    \*    \*    \*    \*    \*

> It is the policy of the IRS that when a taxpayer submits a "voluntary" payment, the taxpayer may designate the tax liability to which the payment will be applied. *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983). However, where the payment is "involuntary," the IRS allocates the payments as it sees fit, applying the payment first to non-trust fund taxes. *Id.* Because the personal liability of the responsible persons offers an additional source for collection of trust fund taxes, this policy increases the government's opportunity to recover in full the taxes due.

*Technical Knockout*, 833 F.2d at 799.

In the bankruptcy proceeding, before proposing a reorganization plan, the company ("TKO") filed a motion to be allowed to

make payments to the IRS first to reduce the trust fund portion of its pre-petition liability. *Id.* The government objected to the designation of payments first to the trust fund portion of its liability. *Id.* The government argued that payments made by a Chapter 11 debtor were involuntary and, therefore, the IRS could apply the payments as it desired. *Id.* The Bankruptcy Court disagreed and granted TKO's motion, allowing the debtor in possession to designate the payments. *Id.* at 799–800.

The government appealed and the Bankruptcy Appellate Panel upheld the Court's decision. *Id.* at 800. The Panel found that Section 505 of the Code, which authorizes bankruptcy courts to determine debtors' tax liabilities, included the authority to allocate repayment of various liabilities. *Id.*

The Court of Appeals reviewed earlier decisions concerning the voluntary/involuntary distinction in the bankruptcy context. *Id.* at 801–02. The Court then concluded that "payments made by a debtor in possession after filing a petition for reorganization under Chapter 11, but prior to confirmation of a reorganization plan, are involuntary." *Id.* at 802.

> Once a debtor files a bankruptcy petition, the property it then possesses, as well as funds acquired thereafter, become the property of the estate. 11 U.S.C. § 541(a). The debtor-in-possession is not free to deal with this property as it chooses, but rather holds it in trust for the benefit of creditors, just as would a trustee. 11 U.S.C. § 1107; S.Rep. No. 989, 95th Cong., 2d Sess. 116, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5902. The property is not held for the benefit of the responsible persons, who, in this action, are not even parties.... The debtor-in-possession is not free to pay whomever it chooses before the [reorganization] plan is confirmed, as this could defeat the priority scheme established by Congress.

*Id.* at 802–03.

Finally, the Court criticized the Bankruptcy Appellate Panel's decision. The Court explained that the Panel mischaracterized the bankruptcy court's decision.

*Id.* at 803. "The bankruptcy court did not order the IRS to apply TKO's payments to the trust fund liability, rather it ordered the IRS to apply the payments in whatever way TKO desired." *Id.* Furthermore, the decision could not rest on the bankruptcy court's equitable jurisdiction, because allowing TKO to designate how the payments were to be applied, without notice to creditors or court approval, would subvert the Code. *Id.*

It appears that the Court's holding in *Technical Knockout* is dispositive of this issue. The Court clearly stated that the debtor is not allowed to designate how the IRS is to apply tax fund payments. Furthermore, this Court finds that *Energy Resources* is limited to the situation where the designation is necessary for a successful reorganization.

*Energy Resources* involved two consolidated actions, concerning corporations that filed petitions for reorganization under Chapter 11 of the Code. ⸺ U.S. at ⸺, 110 S.Ct. at 2141. In one action, the Bankruptcy Court approved a reorganization plan, which included a provision stating that the reorganized corporation would pay its tax debts over a period of years and "that the payments would be applied to extinguish all trust fund tax debtors 'prior to the commencement of payment of the non-trust fund portion' of the tax debts owed." *Id.* (citing *In re Energy Resources Co., Inc.,* 871 F.2d 223, 226 (1st Cir.1989)). The other action involved similar facts. *Id.*

The First Circuit first decided that tax payments made pursuant to a Chapter 11 reorganization plan were involuntary. *Id.* However, the Court also found that "the Bankruptcy Court nevertheless had the authority to order the IRS to apply an 'involuntary' payment made by a Chapter 11 debtor to trust fund tax liabilities if the Bankruptcy Court concluded that this designation was necessary to ensure the success of the reorganization." *Id.* The Supreme Court concluded:

> We affirm the judgment below, for whether or not the payments at issue are rightfully considered to be involuntary, the bankruptcy court has the authority

to order the IRS to apply the payments to trust fund liabilities if the bankruptcy court determines that this designation is necessary to the success of a reorganization plan.

*Id.* — U.S. at ——, 110 S.Ct. at 2141–42.

The Court based its decision on the Code's grant of residual authority to the Bankruptcy Court to approve any appropriate provisions consistent with the Code, 11 U.S.C. §§ 1123(b)(5) and 1129, and allowing bankruptcy courts to issue any orders necessary to carry out any of the Code's provisions, 11 U.S.C. § 105.

Furthermore, it appears that the government's argument in *Energy Resources* is unrelated to its instant argument. In *Energy Resources*, the government argued that the Bankruptcy Court's order conflicted with the government's ability to collect delinquent taxes. — U.S. at ——, 110 S.Ct. at 2142. Moreover, the government maintained:

> [T]he Code provides a priority for specified tax claims, including those at issue in this case, and makes those tax debts nondischargeable.

*Id.* (citations omitted). However, the Court found that these restrictions did not preclude the Bankruptcy Court from issuing orders relating to the designation of tax payments. *Id.*

> [W]hereas the Code gives [the government] the right to be assured that its taxes will be paid in six years, the Government wants an assurance that its taxes will be paid even if the reorganization fails—*i.e.,* even if the bankruptcy court is incorrect in its judgment that the reorganization plan will succeed.

*Id.*

The government also argued that the designations contravene § 6672 of the Code, permitting the IRS to collect unpaid trust fund taxes personally from "responsible" persons. *Id.* The Court disagreed.

> [T]he Bankruptcy Courts' orders do not prevent the Government from collecting trust fund revenue; to the contrary, the orders require the Government to collect trust fund payments before collecting non-trust fund payments. As the

Government concedes, § 6672 remains both during and after the ·corporate Chapter 11 filing as an alternative collection source for trust fund taxes.

> The Government nevertheless contends that the Bankruptcy Court's orders contravene § 6672 because, if the IRS cannot designate a debtor corporation's tax payments as non-trust fund, the debtor might be able to pay only the guaranteed debt, leaving the Government at risk for non-trust fund taxes. This may be the case, but § 6672, by its terms, does not protect against this eventuality. That section plainly does not require us to hold that the orders at issue here, otherwise wholly consistent with the bankruptcy court's authority under the Bankruptcy Code, were nonetheless improvident.

*Id.*

This Court finds that *Energy Resources* is limited to the reorganization situation and, therefore, inapplicable to the instant issue. *Accord In re Arie Enterprises, Inc.,* 116 B.R. 641, 643 (Bkrtcy.S.D.Ill.1990) ("While the Supreme Court [in *Energy Resources* ] held that a Bankruptcy Court has the authority to order the IRS to apply an involuntary payment to trust fund taxes, the ruling was narrow and allowed such action where 'necessary for the success of a reorganization plan.' " (citing *Energy Resources,* — U.S. at ——, 110 S.Ct. at 2142)) The instant action involves liquidation and *Technical Knockout* is dispositive. The Bankruptcy Court did not have the authority to designate the tax fund payments. Therefore, the Bankruptcy Court's judgment must be reversed. Because the court finds this issue dispositive, it declines to discuss the other issues raised.

IT IS ORDERED reversing the judgment of the Bankruptcy Court in B–83–00402–PHX–RGM.